SEYFARTH SHAW LLP
Sheryl L. Skibbe (SBN 199441)
sskibbe@Seyfarth.Com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:  (310) 277-7200
Facsimile:   (310) 201-5219

SEYFARTH SHAW LLP
Shireen Yvette Wetmore (SBN 278501)
swetmore@seyfarth.com
560 Mission Street, 31st Floor
San Francisco, California 94105
Telephone:  (415) 397-2823
Facsimile:   (415) 397-8549

Attorneys for Defendant
MANAGEMENT & TRAINING CORPORATION

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS LOPEZ and ANGEL ALEJO, individuals, and on behalf of all other similarly situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>MANAGEMENT & TRAINING CORPORATION, a Delaware Corporation; and DOES 1 through 50, inclusive,<br><br>          Defendant. | Case No.  **'17CV1624 JM    JMA**<br><br>**DEFENDANT MANAGEMENT & TRAINING CORPORATION'S NOTICE OF REMOVAL TO UNITED STATES DISTRICT COURT** |

**TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFFS CARLOS LOPEZ AND ANGEL ALEJO AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant Management & Training Corporation ("MTC" or "Defendant") files this Notice of Removal pursuant to 28 U.S.C. sections 1441 and 1446, asserting original federal jurisdiction under 28 U.S.C. sections 1332(d)(2) and 1453, to effect the removal of the above-captioned action, which was originally commenced in the Superior Court of the State of California in and for the County of Imperial, to the United States District Court for the Southern District of California. This Court has original jurisdiction over the action pursuant to the Class Action Fairness Act of 2005 ("CAFA") for the following reasons:

## BACKGROUND

1. On June 21, 2017, Plaintiffs Carlos Lopez and Angel Alejo ("Plaintiffs") filed a Complaint in the Superior Court of the State of California, County of Imperial entitled, "*CARLOS LOPEZ and ANGEL ALEJO, individuals, and on behalf of all others similarly situated, Plaintiffs, v. MANAGEMENT & TRAINING CORPORATION, a Delaware corporation and DOES 1 through 50, inclusive* ("Complaint"); Case No. EW-09900. A true and correct copy of all process, pleadings, notices and orders received by Defendant in this action are attached as **Exhibit A** hereto, as required by 28 U.S.C. section 1446(a) and are incorporated by reference as though fully set forth herein.

Plaintiffs' Complaint alleges three purported causes of action as follows: (1) failure to pay straight-time and overtime wages; (2) violations of the Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*) and (3) failure to provide accurate wage statements.

The Complaint seeks to certify a class of "all individuals who are, or previously were, employed by Defendant . . . in the State of California as non-exempt hourly Sergeants and/or Detention Officers, at any time since June 21, 2013 through the date of

trial . . ." (Ex. A., ¶ 20.)  the Complaint also seeks to certify a subclass of all "Class Members employed at any time since June 21, 2016." (Ex. A., ¶ 21.)

Defendant filed its Answer to the Complaint on August 10, 2017.  A true and correct copy of the Answer is attached hereto as **Exhibit B**.  Defendant has not filed any other pleadings or papers in this action prior to this Notice of Removal.

The exhibits listed above constitute all prior pleadings, process, and orders in Defendant's possession that were filed with the court in this matter.

## **TIMELINESS OF REMOVAL**

Without conceding that service of the Summons and Complaint was effective for purposes of 28 U.S.C. section 1446(b), this Notice of Removal is timely because it is being filed within thirty (30) days of Defendant's receipt of the Summons and Complaint on July 12, 2017, and within one (1) year of the commencement of this action.  Thus, removal is timely pursuant to 28 U.S.C. section 1446(b) and Federal Rule of Civil Procedure 6(a).

## **ORIGINAL JURISDICTION – CLASS ACTION FAIRNESS ACT**

This Court has original jurisdiction of this action under CAFA, codified in pertinent part at 28 U.S.C. section 1332(d)(2).  As set forth below, this action is properly removable, pursuant to 28 U.S.C. section 1441(a), in that this Court has original jurisdiction over the action, because the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs, and the action is a class action in which at least one class member is a citizen of a state different from that of a defendant.  28 U.S.C. §§ 1332(d)(2) & (d)(6).  Furthermore, the number of putative class members is greater than 100.  28 U.S.C. § 1332(d)(5)(B); (**Exhibit C**, Decl. of Zebb Kapp in Support of Defendant's Notice of Removal ("Kapp Decl."), ¶ 5.); *see also* Compl., ¶ 22.

### **Diverse Citizenship of the Parties**

CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction; that is, at least one purported class member must be a citizen of a state different from any named defendant.  28 U.S.C. § 1332(d)(2)(A).  In the instant case,

Plaintiffs are citizens of a state that is different from the state of citizenship of the Defendant.

**Plaintiffs' Citizenship.** For purposes of determining diversity, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Inc.*, 704 F.2d 1088, 1090 (9th Cir. 1983). Residence is *prima facie* evidence of domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994). Citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)).

Plaintiff Lopez was and continues to be domiciled in California while he works for MTC in Calexico, California, in the County of Imperial. (Kapp Decl., ¶ 9.) Plaintiff Lopez provided Defendant with his home address during the course of his employment for purposes of his payroll checks. (Kapp Decl., ¶ 9.) MTC requires employees to keep their contact information current while they are employed. Plaintiff Lopez's last known address is located in Imperial County, California. (*Id.*)

Moreover, Plaintiff Lopez admitted in his Complaint that he "is currently employed by Defendant MTC as a Sergeant at the Imperial Regional Detention Facility, located at 1572 Gateway Road, Calexico, California." (Ex. A, ¶ 6.)

Plaintiff Alejo was and continues to be domiciled in California while he works for MTC in Calexico, California, in the County of Imperial. (Kapp Decl., ¶ 10.) Plaintiff Alejo provided Defendant with his home address during the course of his employment for purposes of his payroll checks. (Kapp Decl., ¶ 10.) Plaintiff Alejo's last known address is located in Imperial County, California. (*Id.*)

Moreover, Plaintiff Alejo admitted in his Complaint that he "is currently employed by Defendant MTC as a Detention Officer at the Imperial Regional Detention Facility, located at 1572 Gateway Road, Calexico, California." (Ex. A, ¶ 7.)

Plaintiffs' intent to remain domiciled in California is evident from the fact that Plaintiffs continue to be employed by Defendant in the State of California. Furthermore,

although Plaintiffs have taken the position that MTC owes them unpaid wages (among other claims), neither Plaintiffs nor their counsel have provided MTC with a non-California address to send allegedly unpaid wages. Additionally, Plaintiffs brought this lawsuit against MTC in Imperial County Superior Court. Therefore, Plaintiffs were at all relevant times, and still are, a citizens and residents of the State of California.

**Defendant's Citizenship.** Pursuant to 28 U.S.C. section 1332(c)(1), "for purposes of this subsection and section 1453 [28 U.S.C. § 1453], [a] corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." To determine a corporation's principal place of business for diversity purposes the appropriate test is the "nerve center" test. *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010). Under the "nerve center" test, the principal place of business is the state where the "corporation's officers direct, control, and coordinate the corporation's activities" and where the corporation maintains its headquarters. *Id.* Other relevant factors include where corporate executives maintain their offices, where corporate policies and procedures are made, and where primary corporate functions are based. *See Ho v. Ikon Office Solutions, Inc.*, 143 F. Supp. 2d 1163, 1168 (N.D. Cal. 2001) (nerve center found to be location where corporation's headquarters were located, where the corporate officers worked, and from where corporate policies and procedures were made).

     MTC is now, and ever since this action commenced has been, incorporated under the laws of the State of Delaware, with its principal place of business in Centerville, Utah. (Kapp Decl., ¶ 8.) Centerville, Utah is the site of MTC's corporate headquarters and executive offices, where its high level officers direct, control, and coordinate MTC's activities. (*Id.*) Furthermore, many of MTC's executive and administrative functions, including corporate financing and accounting, are directed from Centerville, Utah. (*Id.*) Accordingly, MTC's principal place of business is Centerville, Utah under the "nerve center" test. *See Hertz Corp.*, 130 S. Ct. at 1192.

Therefore, for diversity of citizenship purposes, MTC is, and has been at all times since this action commenced, a citizen of the State of Utah. 28 U.S.C. § 1332(c)(1).

**Doe Defendants.** The presence of Doe defendants in this case has no bearing on diversity of citizenship for removal. 28 U.S.C. § 1441(a) ("For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded."); *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition); *see Soliman v. Philip Morris, Inc.*, 311 F. 3d 966, 971 (9th Cir. 2002). Thus, the existence of Doe defendants one through fifty does not deprive this Court of jurisdiction. *Abrego Abrego v. Dow Chemical Co.*, 443 F.3d 676, 679-80 (9th Cir. 2006) (rule applied in CAFA removal).

## Amount in Controversy

CAFA requires that the amount in controversy exceed $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. 28 U.S.C. § 1332(d)(6). In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)." Senate Judiciary Committee Report, S. Rep. No. 109-14, at 42 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 40. Moreover, the Senate Judiciary Committee's Report on the final version of CAFA makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. *Id*. at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purposed class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . . Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provision should be

read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

The alleged amount in controversy in this class action, in the aggregate, exceeds $5,000,000.  The Complaint seeks relief on behalf of "all individuals who are, or previously were, employed by Defendant . . . in the State of California as non-exempt hourly Sergeants and/or Detention Officers, at any time since June 21, 2013 through the date of trial." (Ex. A., ¶ 20.)  During the time period identified in the Complaint, MTC employed approximately 257 Sergeants and Detention Officers in California.  (Kapp Decl., ¶ 5.)  The average hourly rate of pay for these individuals is approximately $30.41 per hour during the proposed class period.  (Kapp Decl., ¶ 4.)

Plaintiffs allege, among other claims, that "DEFENDANT failed to provide Plaintiffs with uninterrupted, duty-free 30-minute meal breaks that occurred within the first five hours of employment." (Ex. A, ¶ 9.)  Plaintiffs also allege that "Defendant frequently failed to authorize and permit Plaintiffs and the Class Members to take uninterrupted, duty-free paid 10-minute rest breaks." (Ex. A, ¶ 10.)  Plaintiffs further allege that "Defendant maintained a time-rounding policy that on its face is not fair and neutral and . . . fails to compensate employees properly for all the time that they actually worked."  (Ex. A, ¶ 8.)  Plaintiffs claim that they were "not paid straight-time wages and premium wages at the lawful rate of pay for all hours worked." (Ex. A, ¶ 29.)  Plaintiffs further allege that "Defendants [*sic*] failed to provide Plaintiffs and the Wage Statement Subclass Members with compliant accurate itemized wage statements in accordance with Labor Code § 226(a)." (Ex. A, ¶ 10.)

In sum, Plaintiffs claim that "Defendants [*sic*] maintained and continue to maintain a policy or practice of failing to pay wages for all time actually worked, failing to pay overtime wages at the lawful rate of pay, failing to pay . . . meal period premium payments, and failing to pay rest break premium payments" (Ex. A, ¶47.)  Plaintiffs conclude that the result of these practices is that Defendant's wage statements do not

1 reflect the "correct amount of gross wages earned, . . . net wages earned, . . .hours worked
2 . . .and/or the proper deductions made thereto." (Ex. A, ¶ 47.)

3     Plaintiffs seek to recover on behalf of the alleged class unpaid wages and penalties
4 for Defendant's alleged failure to pay straight time and overtime, failure to pay premiums
5 for missed meal and rest breaks, failure to provide accurate and complete itemized wage
6 statements, and unfair business practices, among others. (Ex. A, Prayer for Relief.)
7 Plaintiffs seek injunctive relief, costs, and attorneys' fees on all causes of action. (Ex. A,
8 Prayer for Relief.)

9     As set forth below, the amount in controversy implicated by the class-wide
10 allegations exceeds $5,000,000.  **All calculations supporting the amount in**
11 **controversy are based on the Complaint's allegations, assuming, without any**
12 **admission, the truth of the facts alleged and assuming liability is established.** When
13 the amount in controversy is not apparent from the face of the Complaint, a defendant
14 may state underlying facts supporting its assertion that the amount in controversy exceeds
15 the jurisdictional threshold. *Abrego*, 443 F.3d at 682-83.

16     **Labor Code § 226(e).** The Complaint alleges that Defendant failed to provide the
17 putative class with accurate itemized wage statements, in violation of California Labor
18 Code § 226. (Ex. A, ¶¶ 44-52.) Labor Code section 226(e) provides a minimum of $50
19 for the initial violation as to each employee, and $100 for each further violation as to
20 each employee, up to a maximum penalty of $4,000 per employee. The statute of
21 limitations for recovery of penalties under Labor Code section 226 is one year. Cal. Civ.
22 Proc. Code § 340(a).

23     MTC pays its non-exempt employees every two weeks. (Kapp Decl., ¶ 7.)
24 Accordingly, there are approximately 26 pay periods per year. Based on Plaintiffs'
25 allegations that Defendant "maintained and continue[s] to maintain a **policy or practice**
26 of failing to pay overtime wages," and meal and rest period premiums (ex. A, ¶ 47,
27 emphasis added), Plaintiffs allege that these practices "resulted and continue to result in
28

the issuance of wage statements to Class Members that do not show the correct amount of gross wages earned." (Ex. A, ¶ 47).

During the statute of limitations period for the wage statement claim, 201 putative Wage Statement Subclass members worked approximately 5,597 pay periods. (Kapp Decl., ¶ 7.)  Thus, the amount in controversy on this claim would equal **$549,650** [($50 for the initial pay period x 201 initial pay periods) + ($100 x 5,396 remaining pay periods)].  Although Defendant denies Plaintiffs' allegations or that they or the putative class are entitled to any relief, based solely on the forgoing calculations for waiting time penalties and wage statement penalties, the aggregate amount in controversy for this one claim for the putative Wage Statement Subclass, exclusive of attorneys' fees, is **$549,650**.

**Failure to Pay Straight-Time and Overtime Wages.**  Plaintiffs allege that MTC had an "auto-deduct meal period policy of 30-minutes," and thus they and the putative class members "*frequently*" worked while they were "clocked-out" for meal periods. (Ex. A, ¶ 28, emphasis added.)  Plaintiffs further allege that Defendant maintains a "time rounding policy" that fails to compensate employees for all hours worked.  (Ex. A, ¶ 8.). Plaintiffs allege that this resulted in unpaid overtime.

During the statute of limitations period for the straight-time and overtime wage claim, 257 putative class members worked approximately 28,337 workweeks.  (Kapp Decl., ¶ 6.)  The average hourly rate of pay was $30.41, making the overtime rate of time and one half equal to $45.62.  Assuming a conservative estimate of 15 minutes per *week* attributable to Plaintiffs' rounding claims, the amount in controversy on this claim would equal **$323,148** [(28,337 workweeks x overtime rate of $45.62 x .25 hours per week)].  If Plaintiffs and the putative class members attribute 30 minutes per week (or 6 minutes per day) to their overtime claims for unpaid time worked during meal periods, this figure doubles to **$646,296**.

**Failure to Pay Meal and Rest Break Premiums.**  Plaintiffs allege that they and the putative class members "**regularly**" were not provided with meal periods, in violation

of Labor Code section 226.7.  (Ex. A, ¶¶ 22, 33, emphasis added.)  Plaintiffs further allege that they and the putative class members "**regularly**" were not afforded paid ten-minute rest breaks.  (Ex. A, ¶ 35, emphasis added.)  Pursuant to the Labor Code, an employee is entitled to one additional hour of pay at the employee's regular rate of compensation for each day that a meal period that was not provided and each day that a rest period was not authorized and permitted.  Lab. Code § 226.7.

During the applicable 4-year limitations period, 257 putative class members worked approximately 28,337 workweeks.  (Kapp Decl., ¶ 6.)  Plaintiffs claim that they and the putative class "regularly" missed both meal and rest breaks.  Even if Plaintiffs and putative class members only missed or received late or shortened meal breaks and missed rest breaks twice per week, the amount in controversy on this claim alone would equal **$3,446,912** [(28,337 workweeks x average hourly rate of $30.41 x 2 for missed meal periods = **$1,723,456**) + (28,337 workweeks x average hourly rate of $30.41 x 2 for missed rest periods = **$1,723,456**)].  This figure accounts for Plaintiffs' allegations that they and their putative class members "frequently" and "regularly" missed rest breaks, possibly up to three per day.  Plaintiffs further allege that "[d]ue to insufficient staffing levels of guards, Plaintiffs and Class Members were *unable* to take compliant rest breaks. . ."  (Ex. A, ¶ 10, emphasis added; *see also* ¶ 11 (defining the class as individuals who "were not authorized and permitted to take paid duty-free 10-minute rest periods").)  Based on Plaintiffs' allegations, which Defendant disputes, Plaintiffs and the putative class members could be alleging that they are entitled to one rest period premium *per day*, resulting in an amount in controversy on the rest period claim alone of **$4,308,641** [(28,337 workweeks x average hourly rate of $30.41 x 5)].

Based on the more conservative estimate of potential damages , the amount in controversy may be summarized as follows:

| | | |
|---|---|---|
| Wage statement penalties | = | **$547,350** |
| Rounding Claim | = | **$323,148** |
| Time worked during meal periods | = | **$646,296** |

|   |   |   |
|---|---|---|
| Missed meal period premiums | = | **$1,723,456** |
| Missed rest period premiums | = | **$1,723,456** |
| Total | = | **$4,966,007** |

**Attorneys' Fees.**  Plaintiff also seeks attorneys' fees and costs.  (Ex. A, Prayer for Relief.)  A reasonable estimate of fees likely to be recovered may be used in calculating the amount in controversy.  *Longmire v. HMS Host USA, Inc.*, 2012 WL 5928485, at *9 (S.D. Cal. Nov. 26, 2012) ("[C]ourts may take into account reasonable estimates of attorneys' fees likely to be incurred when analyzing disputes over the amount in controversy under CAFA.") (*citing Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002)); *Muniz v. Pilot Travel Centers LLC*, 2007 U.S. Dist. LEXIS 31515, at *15 (E.D. Cal. Apr. 30, 2007) (attorneys' fees appropriately included in determining amount in controversy).

In the class action context, courts have found that 25 percent of the aggregate amount in controversy is a benchmark for attorneys' fees award under the "percentage of fund" calculation and courts may depart from this benchmark when warranted.  *See Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012) (attorneys' fees are appropriately included in determining amount in controversy under CAFA); *Powers v. Eichen*, 229 F.3d 1249, 1256-1257 (9th Cir. 2000); *Wren v. RGIS Inventory Specialists*, 2011 U.S. Dist. LEXIS 38667 at *78-84 (N.D. Cal. Apr. 1, 2011) (finding ample support for adjusting the 25% presumptive benchmark upward and found that plaintiffs' request for attorneys' fees in the amount of 42% of the total settlement payment was appropriate and reasonable in the case); *Cicero v. DirecTV, Inc.*, 2010 U.S. Dist. LEXIS 86920 at *16-18 (C.D. Cal. July 27, 2010) (finding attorneys' fees in the amount of 30% of the total gross settlement amount to be reasonable); *see also In re Quintas Securities Litigation*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (noting that in the class action settlement context the benchmark for setting attorneys' fees is 25 percent of the common fund).

Using the benchmark of 25 percent of the total recovery, attorneys' fees on Plaintiffs' claims could be as high **$1,241,502**. This also does not factor in costs incurred for the litigation.

Accordingly, Plaintiff's claims exceed the amount in controversy required under CAFA—the amount in controversy far exceeds the $5,000,000 threshold set forth under 28 U.S.C. § 1332(d)(2) for removal jurisdiction.

Because diversity of citizenship exists, and the amount in controversy exceeds $5,000,000, this Court has original jurisdiction of this action pursuant to 28 U.S.C. section 1332(d)(2). This action is therefore a proper one for removal to this Court pursuant to 28 U.S.C. section 1441(a).

To the extent that Plaintiffs have alleged any other claims for relief in the Complaint over which this Court would not have original jurisdiction under 28 U.S.C. section 1332(d), the Court has supplemental jurisdiction over any such claims pursuant to 28 U.S.C. section 1367(a).

## VENUE AND INTRADISTRICT ASSIGNMENT

Venue lies in the United States District Court for the Southern District of California pursuant to 28 U.S.C. sections 1441, 1446(a) and 84(a). This action originally was brought in the Superior Court of the State of California, County of Imperial. As discussed above, Plaintiffs Lopez and Alejo are residents of California residing in Imperial County. The County of Imperial is located within the jurisdiction of the United States District Court, Southern District of California.

## NOTICE OF REMOVAL

A true and correct copy of this Notice of Removal will be promptly served on Plaintiffs and filed with the Clerk of the Superior Court of the State of California, County of Imperial.

///
///
///

WHEREFORE, Defendant prays that the above action now pending before the Superior Court of the State of California for the County of Imperial be removed to the United States District Court for the Southern District of California.

DATED: August 11, 2017            Respectfully submitted,

SEYFARTH SHAW LLP


By: */s/ Shireen Yvette Wetmore*
    Sheryl L. Skibbe
    Shireen Yvette Wetmore

    Attorneys for Defendant
    MANAGEMENT & TRAINING
    CORPORATION

40268980v.3