1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS LOPEZ and ANGEL ALEJO, individually, and on behalf of all others similarly situated,<br><br>                         Plaintiffs,<br><br>v.<br><br>MANAGEMENT AND TRAINING CORPORATION, a Delaware corporation,<br><br>                         Defendant. | Case No.:  17cv1624 JM(RBM)<br><br>**FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARDS OF ATTORNEYS' FEES, LITIGATION COSTS AND CLASS REPRESENTATIVE SERVICE ENHANCEMENTS** |

      Presently before the court is Plaintiffs' unopposed motion for final approval of class action settlement and motion for an award of attorneys' fees and litigation costs, and class representative service enhancements.  (Doc. Nos. 47, 48.)  A hearing on the motion was held on April 2, 2020.  For the reasons set forth on the record and as explained in more detail below, the motion for final approval is granted, and the motion for an award of attorneys' fee and litigation costs and class representative service enhancements is granted in the sums set forth in this order.

## I.  Background

      On June 21, 2017, Plaintiffs initiated this action by filing suit in Imperial County Superior Court asserting three claims: failure to pay straight time and overtime wages; violation of California's Unfair Competition Law, CAL. BUS & PROF. CODE §17200, *et*

*seq.*; and failure to provide accurate wage statements.  (Doc. No. 1-2.)  Defendant Management and Training Corporation ("MTC") removed the case to federal court on August 11, 2017.  (Doc. No. 1.)  MTC maintains contracts with various state governments and the federal government for the purpose of managing prisons throughout the United States.  (Doc No. 46 at ¶ 14.)  This lawsuit arises out of MTC's alleged failure to properly compensate all Sergeants, Detention Officers, and Correction Officers for all work performed.

On April 10, 2018, the complaint was amended to include a Private Attorney General Act ("PAGA") violation.[1]  (Doc. No. 15.)  A second amended complaint ("SAC") was filed on December 13, 2019.  (Doc. No. 46.)

On August 30, 2019, after participating in two private mediations, the parties notified the court that they reached a settlement.

The Joint Stipulation and Settlement Agreement ("Settlement") provides for settlement and full release of the wage and hour class actions claims brought on behalf of the class and requires MTC to pay a gross settlement amount of $3,500,000.  (Doc. No. 40-2, Exhibit 1, "Settlement" ¶ 1.7.)  The Settlement authorizes, subject to court approval: $10,000 as an incentive award for Lopez; $10,000 as an incentive award for Alejo; $1,166,666 to Plaintiffs' counsel; $20,753.78 in litigation costs[2]; $75,000 to be paid to the LWDA as settlement of the PAGA claim[3]; and $14,000 to the CPT Group, Inc., the Class Administrator, for administration costs[4].  (*See* Settlement, pgs. 19-25.).  Once the court-approved deductions are removed, the net settlement amount ("NSA"), is estimated at

---

[1] On June 22, 2017, Plaintiffs provided notice to the Labor and Workforce Development Agency ("LWDA") of similar allegations against Defendant. (SAC at ¶ 4.)  On May 17, 2019, Plaintiffs provided an Amended Notice to the LWDA.  (*Id*.)

[2] Estimated in the Settlement at $25,000.00.

[3] 75 percent of the $100,000 amount allocated as civil penalties under PAGA, as per the Settlement, with the remaining $25,000.00 to be paid to the aggrieved employees on a proportionate basis.  (Settlement ¶ 4.7.)

[4] Estimated in the Settlement at $15,000.00.

$2,203,580.22.   In addition, Defendant will pay the Employer's share of payroll taxes separate and apart from the class settlement amount.  (*Id.* ¶ 4.6.)

The Settlement calls for the payment of $750.00 to each eligible member of the Section 203 Sub-Class, for penalties allegedly owed under California Labor Code Section 203.  (*Id*. ¶ 4.2.1).  The Section 203 Sub-Class payment is to be deducted from the class settlement amount prior to determining the NSA.  (*Id.*)  It has been determined that there are 206 members of the Section 203 Sub-Class who must each receive $750.00, totaling a payment of $154,500.00.  After deducting this sum, the remaining amount in the NSA is $ 2,049,080.22.   Under the Settlement, the 583 class members will each receive an individual payment calculated by using a pro rata share determined by the number of weeks worked during the class period.  (*Id.* ¶ 4.2.2)

The separately filed motion for attorneys' fees seeks 33.33 percent of the class action settlement amount, or $1,166,666.00, reimbursement of $20,753.78 in litigation expenses, and for named Plaintiffs Lopez and Alejo a class representative award of $10,000 each. (Doc. No. 47.)

On October 25, 2019, Plaintiffs filed an unopposed motion for preliminary approval of the settlement.  (Doc. No. 40.)  After holding a hearing on the motion on December 9, 2019, the court granted the motion and preliminarily approved the settlement on December 13, 2019.  (Doc. No. 45.)  The preliminary approval order set a final approval hearing for April 2, 2020.  The final approval hearing took place on April 2, 2020.  All counsel appeared telephonically with the doors to the courtroom remaining open to the public.  No Class Members filed objections to the settlement, and no Class Members attended the hearing.  No members have requested exclusion from the settlement.

## II.     Final Approval of Settlement

### A. Certification of the Settlement Class

The Settlement here envisions certification of a class of:

all of Defendant's hourly, non-exempt Sergeants, Detention Officers, Correction Officers and other similarly titled officers, if any, who were

employed in the State of California at any time between June 21, 2013 through the date of Preliminary Approval, but in no event later than November 30, 2019.

(Settlement ¶ 1.6.)  Additionally, the Section 203 Sub-Class members are defined as "that portion of the Settlement Class, who at any time from June 21, 2012 through the date of Preliminary Approval, but no later than November 30, 2019, were separated from employment with Defendant in California."  (*Id.* ¶ 1.27.)

Before approving the Settlement, the court's "threshold task is to ascertain whether the proposed settlement class satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure applicable to class actions, namely: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation."  *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011). In the settlement context, the court "must pay undiluted, even heightened, attention to class certification requirements." *Id.*  In addition, the court must determine whether class counsel is adequate (Fed. R. Civ. P. 23(g)), and whether "the action is maintainable under Rule 23(b)(1), (2), or (3)." *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 462 (9th Cir. 2000) (quoting *Amchem Prod., Inc., v. Windsor,* 521 U.S. 591, 614 (1997)).

### 1.  Numerosity

This requirement is satisfied if the class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "A class greater than forty members often satisfies this requirement …."  *Walker v. Hewlett-Packard Co.,* 295 F.R.D. 472, 482 (S.D. Cal. 2013) (citing *Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.,* 249 F.R.D. 334, 346 (N.D. Cal. 2008).  Here, notice packets were mailed to 538 potential Class Members.  Joinder of all these potential plaintiffs would be impracticable.  Accordingly, this requirement has been met.

///

///

///

### 2. Commonality

This requirement is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "To satisfy this commonality requirement, plaintiffs need only point to a single issue common to the class." *Vasquez v. Coast Valley Roofing, Inc.,* 670 F. Supp. 114, 1121 (E.D. Cal. 2009). Here, the commonality requirement is satisfied because all of the class claims involve common questions of law and fact surrounding Defendant's purported failure to pay class members for all time worked, including time automatically deducted for meal breaks, allegedly subjecting Class Members to a time rounding policy that on its face was not fair and neutral, and which was allegedly implemented in a manner that failed to compensate employees for all time under the employer's control, and a claimed failure to provide duty-free rest periods due to the nature and work being performed by Class Members.

### 3. Typicality

This requirement is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation and citation omitted). Here, the typicality requirement is satisfied because the claims of named Plaintiffs and the Class are based on the claims that MTC's policies violate various California labor laws. Moreover, the Plaintiffs and the Class Members are alleged to have suffered the same injuries, including the non-payment of overtime wages. Therefore, for purposes of settlement, Plaintiffs have made an adequate showing of typicality.

### 4. Adequacy

The final Rule 23(a) requirement is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requires the court address two questions: "(a) do the named plaintiffs and their counsel have any

conflicts of interest with other class members, and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class." *In re Mego*, 213 F.3d at 462. A court certifying a class must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.* at 23(g)(1)(B).

Here, there is no obvious conflict between Lopez's and Alejo's interests and those of the Class Members. Similarly, the court is unaware of any reason that would warrant altering its earlier determination that Class Counsel can adequately represent the interests of the class. Furthermore, no Class Member has filed an objection challenging the adequacy of the representative parties. Accordingly, the court finds this element satisfied for the purposes of certification of the settlement class.

## 5. Predominance and Superiority

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must show that the action is maintainable under Fed. R. Civ. P 23(b)(1), (2) or (3)." *Hanlon,* 150 F.3d at 1022. "Rule 23(b)(3) permits a party to maintain a class action if . . . the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Conn. Ret. Plans & Trust Funds v. Amgen Inc.,* 660 F.3d 1170, 1173 (9th Cir. 2011), *aff'd* 133 S. Ct. 1184 (2013) (citing Fed. R. Civ. P. 23(b)(3)). The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon,* 150 F.3d at 1022-23 (quoting *Amchem Prods, Inc.,* 521 U.S. at 623). An examination into whether there are "legal or factual questions that qualify each class member's case as a genuine controversy" is required. *Id.* The

superiority inquiry "requires determination of whether the objectives of a particular class action procedure will be achieved in a particular case." *Id.* at 123.

Here, all of the Class Members were allegedly subject to Defendant's failure to pay them for time worked as a result of Defendant's labor policies. Resolution of common questions regarding, for example, whether Defendant failed to pay Class Members for all time worked and whether Defendant failed to provide compliant meal and rest breaks, are applicable to all members of the Class. Thus, although the degree of the underpayment of wages may vary between Members, the Class is "sufficiently cohesive to warrant adjudication by representation." *Local Joint Exec. Bd of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.* 244 F.3d 1152, 1162 (9th Cir. 2001). In sum, the legal and factual questions common to each Class Member's claim predominate over any questions affecting individual Class Members. The relatively limited potential recovery for the Class Members as compared with the costs of litigating the claims also support the preliminary conclusion that a class action is superior to other methods for adjudicating this controversy.

In accordance with the above, the court conditionally certifies the Rule 23 Class for the purposes of settlement.

### B. Legal Standard for Final Approval of Class Settlement

When a settlement is reached prior to formal class certification, "such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth Headset Products. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon,* 150 F.3d at 1025. The Rule also "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate and reasonable." *Id.* at 1026. In making this determination, the court is required to "evaluate the fairness of a settlement as a whole, rather than assessing its individual

components." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818-19 (9th Cir. 2012).  Because a "settlement is the offspring of compromise, the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027.

In assessing a settlement proposal, the district court is required to balance a number of factors, namely:

> the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* at 1026.  When reviewing a proposed settlement, the court's primary concern "is the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties."  *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 624 (9th Cir. 1982).  Ultimately, "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

### C. Analysis

#### 1. Adequacy of Notice

The court approved notice of this class action and proposed settlement in the December 13, 2019 Preliminary Approval Order.  The claims administrator distributed the Notice to 583 potential class members.  The Notice advised the Class of the terms of the Settlement, of their rights: (1) to participate and to receive their share of the Settlement automatically, without submission of a claim form; (2) to object to the Settlement and to appear at the Final Approval Hearing; (3) to request exclusion from the Settlement; (4) the manner and timing for doing any of these acts; and (5) the date and time set for the Final Approval Hearing.  The Notice packet also included the Class Member's individualized

information such as total number of weeks worked during the Class Period, estimated share of the NSA and whether the Class Member's employment dates make them eligible to be members of the Section 203 Sub-class.  Adequate periods of time were provided for each of these procedures.  No Class Members objected to the settlement or the adequacy of the Notice, and no Class Member has requested exclusion from the Class.

### 2. Strength of Plaintiffs' Case; Risk of Further Litigation; and Risk of Maintaining Class Action Status

The preferable nature of settlement over the uncertainties, expense and length of litigation, means "when assessing the strength of plaintiff's case, the court does not reach any ultimate conclusions regarding the contested issues of fact and the law that underlie the merits of this litigation." *Four in One Co. v. S.K. Foods, L.P.,* No. 2:08-CV-3017 KJM EFB, 2014 WL 4078238, at *7 (E.D. Cal. Aug. 14, 2014) (internal quotations omitted). Similarly, "a proposed settlement is not to be judged against a speculative measure of what might have been awarded in a judgment in favor of the class." *Nat'l Rural Telecomms. Coop,* 221 F.R.D. at 526.

Here, the Settlement was reached over two years after this case was filed and involved disputed legal claims and issues.  The inherent risk of further litigation is known to all involved.   Proceeding with the case presents very real risks regarding class certification, summary judgment, *Daubert* and *in limine* motions, proving the necessary damages at trial, and a possible unfavorable decision on the merits.  *See Fernandez v. Victoria Secret Stores, LLC,* No. CV 06-04149 MMM (SHx), 2008 WL 81508566, at *6 (C.D. Cal. July 21, 2008) ("Because both parties face extended, expensive future litigation, and because both faced the very real possibility that they would not prevail, this factor supports approval of the settlement.")  While Plaintiffs believe in the merits of their case, Defendant presents defenses to class liability and damages determinations, and there is no guarantee Plaintiffs will prevail.  The court finds these risks weigh in favor of settlement.

///

///

### 3.  The Amount Offered in Settlement

"Basic to [the process of deciding whether a proposed settlement is fair, reasonable and adequate] * * * is the need to compare the terms of the compromise with the likely rewards of litigation."  *In re TD Ameritrade Accountholder Litig.*, 226 F.R.D. 418, 422 (N.D. Cal. 2009) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry Inc. v. Anderson*, 3980 U.S. 414, 424-25 (1968)).  "The fact that a proposed settlement may only amount to a fraction of the potential does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved."  *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir. 1998) (citation omitted).

Here, the Settlement authorizes a recovery of $3,500,000.00, less court-awarded fees and expenses, the LWDA PAGA award, and the costs of administering the Settlement. Under the terms of the Settlement, all 206 members of the Section 203 Sub-class will each receive a payment of $750.00, for a total payment of $154,500.00.  The remaining NSA amount of $2,049,080.22 will be distributed proportionally among the Class Members based on the number of hours worked during the Class Period.  Under the terms of the Settlement, each of the 377 Class Members not receiving a Section 203 award will receive, on average, $4,207.60.  Under the terms of the Settlement, each of the 206 Class Members receiving a Section 23 award will receive, on average, $2,996.67.  In light of the risks associated with continuing this litigation, the court finds the proposed payouts to be fair, reasonable and adequate and the total to be in favor of approval of the settlement.

### 4.  Extent of Discovery and Stage of Proceedings

A court should focus on whether the "parties have sufficient information to make an informed decision about settlement."  *In re Mego Fin. Corp. Sec.  Litig.*, 213 F.3d at 459 (quoting *Linney,* 151 F.3d at 1239).  *See also Onitverso v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014) ("A settlement that occurs in an advanced stage of the proceedings indicates the parties carefully investigated the claims before reaching a resolution.").

Here, the parties have litigated this case for over two and half years, with Plaintiffs filing an original complaint, First Amended Complaint, and Second Amended Complaint.

Both parties have formally been engaged in written discovery and document exchange, and Class Counsel have conducted over 125 in-person interviews and spoken to a substantial number of class members telephonically. The parties also engaged in two arms-length private mediation sessions with neutral third parties. Thus, the court is comfortable concluding that the parties have "sufficient information to make an informed decision about settlement." *Linney,* 151 F.3d at 1239. Accordingly, this factor weighs in favor of approval of the settlement.

### 5. Experience of Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citing *Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 622 (N.D. Cal. 1979)). Here, Class Counsel has provided a declaration detailing their experience in wage and hour class action cases. Class Counsel declares that the settlement provides immediate benefits to the Class and is in its best interests when weighed against the inherent risks of proceeding with this litigation. (Doc. No. 48-2 at ¶ 25.) Mr. Singer attests that "counsel on both sides share the view that this is a fair and reasonable Settlement in light of the complexities of the case, the state of the law, and of the uncertainties of the outcome of the pending motions and litigation. The opinion of counsel in support of the proposed Settlement is based on a realistic assessment of the strengths and weaknesses of their respective cases, extensive legal and factual research, substantial discovery, and extensive briefing of many dispositive issues." (*Id.* at ¶ 24.) In light of the foregoing, and according proper weight to the judgment of counsel, the court finds this factor weighs in favor of the settlement.

### 6. Reaction of Class Members

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement are favorable to the class members." *Nat'l Rural Telecomm. Coop., Inc.,* 221 F.R.D. at 529 (citations omitted). Here, no Class Members have opted out of the class and no objections to the settlement have been received. *Id.* (The absence of a single objection "is compelling

evidence that the Proposed Settlement is fair, just, reasonable, and adequate.") Accordingly, the court finds this factor weighs in favor of settlement.

### 7. Other Factors

In looking at the fairness of the Settlement, the court also considers two additional factors: the process by which the settlement was reached and the involvement of the named plaintiffs in the process. *See Young v. Polo Retail, LLC,* No. C-02-4546 VRW, 2007 WL 951821, *3 (N.D. Cal. Mar. 28, 2007) (adding factors "(9) the procedure by which the settlements were arrived at, see MANUAL FOR COMPLEX LITITGATION (FOURTH) § 21.6 (2004), and (10) the role taken by the plaintiff in that process."). Here, the parties reached agreement after attending two separate all-day mediations before neutral third parties. Class counsel declares that Plaintiffs have been provided assistance throughout this litigation and have invested much personal time and effort in the prosecution, factual development and settlement of this case, including being in communication during each of the mediation sessions. Although neither Plaintiff personally attended the mediations, both declare that they spent time discussing both mediations with their attorneys and that they ultimately reviewed the finalized settlement (Doc. No. 47-7 at ¶ 8; Doc. No. 47-8 at ¶ 8.) Further, there is no evidence of preferential treatment for certain Class Members, because final approval is not contingent upon the court's determination of the class representative incentive awards. Accordingly, the court finds these factors weigh in favor of settlement.

### 8. Balancing of the Factors

"Ultimately, the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice*, 688 F.2d at 625 (citation omitted). "[I]t must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation." *Id.* Having considered the relevant factors, the court finds they all weigh heavily in favor of settlement of the Rule 23 Class claim. Consequently, the court finds the settlement fundamentally fair, adequate and reasonable.

### III.   Motion for Attorneys' Fees, Cost and Representative Payments

### A.  Attorneys' Fees

In *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d. 988, 993-94, (9th Cir. 2010), the Ninth Circuit held that the "plain text of Fed. R. Civ. P. 23(h) requires that any class member be allowed an opportunity to object to the fee 'motion' itself, not merely to the preliminary notice that such a motion will be filed.'"  Plaintiffs timely filed their fee motion on February 3, 2020, and no Class Member has filed an objection to the request in the time allotted to file objections.

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  However, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to the amount." *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d at 946.  That Defendant has agreed in the settlement not to oppose Counsel's request for $1,166,666 "does not detract from the need carefully to scrutinize the fee award." *Staton v. Boeing*, 327 F.3d 938, 964 (9th Cir. 2003).

In a diversity action under CAFA, federal courts apply state law when determining both the right to fees and the method of calculating them.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Mangold v. Cal. Pub. Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) ("Existing Ninth Circuit precedent has applied state law in determining not only the right to fees, but also in the method of calculating fees."). Following the California Supreme Court's decision in *Lafitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480 (2016), courts may either use the lodestar approach or "may determine the amount of reasonable fees by choosing an appropriate percentage of the fund created." *Lafitte,* 1 Cal. 5th at 503-06.  In discerning an appropriate percentage in a common fund case, the California Supreme Court suggested considering the risks and potential value of the litigation, the contingency, novelty, and difficulty of the litigation, the skills shown by counsel, and a lodestar cross-check.  *Id.* at 495, 503-06.   Although the court recognized

the Ninth Circuit's 25 percent benchmark in common fund cases, it did not adopt this touchstone.[5]  Generally, "California courts routinely award attorneys' fees of one-third of the common fund."  *Beaver v. Tarsadia Hotels*, No. 11-CV-01842-GPC-KSC, 2017 WL 4310707, at *9 (S.D. Cal. Sept. 28, 2017) (approving a fee award of one-third of the $15,150,000 settlement fund in a class action settlement).

Here, Class Counsel submit that awarding $1,166,666.00 or 33.33 percent of the common fund is fair and reasonable in light of the substantial hours expended, the discovery conducted, preparation and attendance at two mediations, the litigation risks associated with proceeding, the complexity of the case, the contingent nature of the fee, Class Counsel's experience, and the benefit that has been conferred on the class.  (Doc. No. 47-1 at 13.)  But the court is not persuaded that the requested fees are reasonable.

Analogous wage and hour class action settlements in California district courts illustrate that courts have been known to award fees ranging from well below the federal 25 percent benchmark to amounts equal to or greater than the 33.33 percent being requested here.  As the court has acknowledged above, the settlement amount of $3,500,000 confers substantial benefits upon the Settlement Class, particularly in light of the risks associated with continuing this litigation to trial and weighs in favor of the fee amount.  While the litigation as a whole does involve some substantial and labor-intensive elements, which

---

[5] When employing their discretion and utilizing the percentage-of-recovery method, federal "courts typically calculate 25% of the [common settlement] fund as the 'benchmark' for a reasonable fee award."  *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d at 942.  In assessing the reasonableness of the award in common fund percentage award cases, the Ninth Circuit has provided a non-exhaustive list of factors to be used, including "the extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g. cost, duration, foregoing other work), and whether the case was handled on a contingency basis."  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015).

weigh in favor of the requested fees, the claims are fairly standard for wage and hour cases and do not involve novel legal issues.  *See In re Heritage Bond Litig.,* 2005 WL 1594403, at \*20 (C.D. Cal. June 10, 2005) ("the novelty, difficulty and complexity of the issues involved are significant factors in determining a fee award.")  The experience of Class Counsel in litigating class actions of this type does, however, support the request.  Class Counsel took this case on a contingent fee basis and assumed the contingent risk of non-payment which weighs in favor of the award.  *See In re Quantum Health Res., Inc. Sec. Litig.,* 962 F. Supp. 1254, 1257 (C.D. Cal. 1997) ("Because payment is contingent upon receiving a favorable result for the class, an attorney should be compensated both for services rendered and for the risk of loss or nonpayment assumed by accepting and prosecuting the case.")  Moreover, the reaction of the Class to the settlement supports the fee application as no class member has objected or requested exclusion.  *See In re Heritage Bond,* 2005 WL 1594403, at \*21 ("The existence or absence of objectors to the attorneys' fee award is a factor in determining the appropriate fee award") (citation omitted).  Notably, the Settlement has been reached relatively early with standard interrogatories and production requests propounded, depositions only just beginning, discovery far from complete, and class certification only just briefed.  No significant motion practice has occurred.  Finally, Plaintiffs attempt to bolster their fee request with reference to Defendant's material changes to its policies and practices that benefit employees. (Doc. No. 47-1 at 14 "[s]hortly after this action was filed, Defendant discontinued its auto-deduct policy").  While the court accepts this representation, it is not buttressed by any evidence currently before the court.

In support of their fee request, Class Counsel have submitted a lodestar calculation.[6] (Doc. No. 50 at 24-25.)  Class Counsel declare a total of 1,726.09 hours have been worked

---

[6] The original lodestar calculations have been revised by Mr. Dychter in his supplemental declaration to reflect additional billable hours by Mr. Spiewak.  (Doc. No. 50.)

17cv1624 JM(RBM)

on this case and estimate an additional 25 hours of work will occur before this case is closed.[7]  The calculated lodestar for these hours is $1,105,755.[8]  Class Counsel's loadstar calculation results in a multiplier of 1.05.[9]  It is attested that: (1) the Cohelan, Khoury & Singer firm expended a total of 598.2 hours on the case and that the calculated lodestar fee on these hours is $396,335; (2) the Dychter Law Officers, APC, expended a total of 1,070.7 hours on the case and that the calculated lodestar fee on these hours is $659,020; and (3) United Employees Law Group, P.C., expended 58 hours on the case, and that the calculated lodestar fee on these hours is $39,150.  (*Id.* at 25.)  Included in the lodestar calculation was worked performed by two paralegals, Amber Worden and Matthew Atlas at Cohelan Khoury & Singer.  Counsel calculate the lodestar with hourly rates for attorneys from all three firms ranging from $900 to $500 an hour, and the paralegals are billed at $200 and $175 an hour.

///

///

///

///

///

///

///

---

[7] This additional 25 hours is for "the final approval process, to attend final approval and supplemental hearings (if any), obtain supplemental administrator declarations, work with defense counsel and the administrator re: disputed claims; funding, distribution, tax forms, transmittal instruments-process, answer class member questions, etc., at a blended rate of $450 per hour."  (Doc. No. 50 at 25.)

[8] Previously, Mr. Singer had declared that Counsel had worked a total of 1,674.20 hours (1,699.2 if the additional 25 hours are included) and that the calculated lodestar for these hours is $1,074,010.  (Doc. No. 47-2, at ¶ 33, Ex. 1)

[9] Originally, the lodestar multiplier was calculated at 1.08.  (Doc. No. 47.1 at 24.)

16

| COHELAN KHOURY & SINGER | | | | |
|---|---|---|---|---|
| **ATTORNEYS** | **TITLE** | **HOURS WORKED** | **HOURLY RATE** | **TOTAL FEES** |
| Timothy D. Cohelan | Partner | 11.6 | $900 | $  10,440.00 |
| Isam C. Khoury | Partner | 28.1 | $875 | $  24,587.50 |
| Michael D. Singer | Partner | 129.4 | $875 | $  113,225.00 |
| Diana  M. Khoury | Partner | 28.5 | $725 | $  20,662.50 |
| J. Jason Hill | Partner | 361.2 | $600 | $  216,720.00 |
| Kristina De La Rosa | Associate | 10.5 | $500 | $  5,250.00 |
| Amber Worden | Paralegal | 15.7 | $200 | $  3,140.00 |
| Matthew Atlas | Paralegal | 13.2 | $175 | $  2,310.00 |
| **COHELAN KHOURY & SINGER TOTAL:** | | **598.2** | | **$  396,335.00** |
| | | | | |
| DYCHTER LAW OFFICES, APC | | | | |
| Alexander I. Dychter, Esq. | Partner | 659.0 | $625 | $  411, 875.00 |
| S. Adam Spiewak, Esq | Of Counsel | 406.7 | $600 | $  244,020.00[10] |
| **DYCHTER LAW OFFICES, APC TOTAL** | | **1,070.7** | | **$  659,020.00[11]** |
| | | | | |
| UNITED EMPLOYEES LAW GROUP, P.C. | | | | |
| Walter L. Haines, Esq. | Partner | 58 | $675 | $  39,150.00 |
| **UNITED EMPLOYEES LAW GROUP, P.C. TOTAL:** | | **58.0** | | **$  39,150.00** |

---

[10] In the original submission, Mr. Spiewak's total hours were submitted as 359 for a total of $215,400.00.

[11] Originally, the Dychter Law Offices' hours totaled 1,018.0 for fees totaling $627,275.00.

17cv1624 JM(RBM)

Class Counsels' rate is reasonable.  In support, Class Counsel have submitted declarations attesting to the hours worked and billing rates, a Cohelan Khoury & Singer's firm profile, attorney biographies, a 2014 National Law Journal Billing Survey, and a list of several wage and hour class action matters that the Dychter Law Offices have settled indicating hourly rates and fee awards approved by a variety of district and superior courts in California. (Doc. No. 47-2 at 28-44, 48-56; 47-3 at 2-5; 47-4 at 2-3; 47-5 at 2-3.)  The rates detailed in the declarations of Class Counsel have been accepted in other class action cases and are comparable to rates approved previously by this court and other district courts in class action litigation in this community.  *See, e.g., McGrath v. Wyndham Resort Dev. Corp.,* Case No.: 15cv1631 JM (KSC), 2018 WL 637858, at *7-10 (S.D. Cal. Jan 30, 2018) (approving attorneys' fee request with Cohelan Khoury Singer's class counsel rates ranging from $450 to $850); *Nunez v. BAE Systems San Diego Ship Repair Inc.,* 292 F. Supp. 3d 1018, 1055-1057 (S.D. Cal. 2017) (approving Mr. Dychter's hourly rate of $600 and awarding 25 percent of common fund).

While the court need not engage in a full-blown lodestar analysis when the primary basis remains the percentage method, the calculation is meant to provide a "useful perspective on the reasonableness of a given percentage award." *Vizcaino,* 290 F.3d at 1050.  Some review is required, however, even though the court need not closely scrutinize each claimed attorney-hour.

Here, Class Counsel assert they have worked 1,732.9 on this case.  In their initial submission, Class Counsel provided very little detail to support their fee request.  For example, Cohelan, Khoury & Singer provided only six paragraphs within a declaration to support the number of hours worked on the case, Mr. Haines explained in just 30 words the work he did to justify $39,150 in fees and Messrs. Dychter and Speiwak gave approximate ranges for the number of hours worked for every task.  (*See* Doc. No. 47-2 at ¶¶ 40-45; Doc. No. 47.5 at ¶ 7; Doc. No. 47-3 at 5-8; Doc. No. 47-4 at 3-5.)  In sum, no evidence was provided to support their claim.  After being questioned at the final approval hearing regarding what discovery took place to justify such a high award considering that

no significant motion practice had occurred in this case, Class Counsel agreed to supplement their request for attorneys' fees.

The supplemental declarations submitted provide some support for the fee request. (*See* Doc. No. 50; Doc. No. 50-1.)  They demonstrate that Mr. Singer and Mr. Dychter went on a site inspection to Defendant's detention facility in Calexico, California.  They also illustrate that attorneys Hill and Dychter conducted a two-day town hall meeting for potential class members.  The court does, however, question the necessity of having nine attorneys and two paralegals work on this case when the case is in its relative infancy and when only initial discovery has been propounded and produced.  Neither is the court convinced of the necessity of experienced class action litigators billing over 275 hours for work related to a class certification motion in which class certification issues seemed neither complex nor novel.  Similarly, the court questions the 138.75 hours billed related to the second mediation.

Considering the foregoing, the court finds an award of 30 percent of the class settlement amount more reasonable.  This reflects the very positive result achieved for the class, tempered by a portion of hours excessively billed, the early stage of the case at the time of settlement and the lack of complex or novel issues.  *See Spann v. J.C. Penny Corp., Inc.,* 211 F. Supp. 3d 1244, 1263 (C.D. Cal. 2016) ("As always, when determining attorneys' fees the district court [is] guided by the fundamental principles that fee awards out of common funds be reasonable under the circumstances.") (quoting *Glass v. UBS Fin. Servs., Inc.,* 2007 WL 2211862, at *14 (N.D. Cal. 2007) *aff'd* 331 Fed. Appx. 452 (9th Cir. 2009)).  Accordingly, the court awards Class Counsel attorneys' fees in the amount of $1,050,000.

**B. Costs**

Attorneys are entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client."  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).  Plaintiffs assert that they have incurred $ 20,745.78 in costs over the course of the litigation. (Doc. No. 47-2 at ¶ 46.)  The court has reviewed the request and finds it to be reasonable.  Accordingly, the court awards $20, 745.78 in costs.

### C. Settlement Administration Cost

Class Counsel seeks payment of $14,000 to the Claims Administrator.  The court has reviewed the declaration detailing the work performed by CPT Group, Inc., (Doc. No. 47-6), and finds that paying this amount in administrative costs reasonable.  The requested amount of $14,000 falls under the estimated $15,000 set in the Settlement Agreement for administration of the class action settlement.  (Settlement ¶ 4.5.)  Accordingly, the court grants Plaintiffs' request.

### D. Class Representative Payments

Although "incentive awards are fairly typical in class action cases," they are discretionary.  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009).  "Generally, when a person joins in bringing an action as a class action he has disclaimed any right to a preferred position in the settlement."  *Staton*, 327 F.3d at 976.  (internal ellipses, quotations, and citation omitted).  The purpose of incentive awards, therefore, is "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Rodriguez,* 563 F.3d at 958-59.  However, "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives."  *Radcliffe v. Experian Info. Solutions Inc.,* 715 F.3d 1157, 1164 (9th Cir. 2013).

In the settlement papers, the two named Plaintiffs ask for incentive awards of $10,000 each.  Class Counsel declare that the two named Plaintiffs have invested much personal time and effort in the factual development, prosecution, mediation and settlement of this litigation and also undertook risks associated with the payment of costs if the case had been lost, have signed general releases of all claims arising from their employment, and face stigma upon future employment opportunities having sued a former employer.  Mr. Lopez and Mr. Alejo have each submitted a declaration attesting that they have: (1) regularly communicated with Class Counsel; (2) attended the Early Neutral Evaluation; (3) participated in discovery; (4) sat for a deposition; (5) prepared a declaration in support

of the motion for Class Certification; (6) consulted with Class Counsel regarding the mediation; (7) evaluated and approved the proposed settlement; and (8) regularly provided case updates to co-workers. (Doc. No. 47-7, Doc. No. 47-8.)

Given Plaintiffs' level of involvement in the case, the undertaking of the risk in bringing this action, and the fact the amount of the request is consistent with those typically awarded as incentive payments, the court determines that Plaintiffs' request is reasonable. *See, e.g., McGrath,* 2018 WL 637858, at *11 (awarding $10,000 to class representative); *Singer v. Becton Dickinson & Co*., No. 08-CV-821-IEG (BLM), 2010 WL 2196104, at *9 (S.D. Cal. June 1, 2010) ($25,000 award); *Cicero v. DirecTV*, No EDCV 07-1182, 2010 WL 2991486, at *7 (C.D. Cal. July 27, 2010) (approving incentive awards of $7,500 and $5,000). There are not any circumstances indicating that these awards would create a conflict between the named Plaintiffs and Class Members. Accordingly, Plaintiffs Lopez and Alejo are each awarded $10,000 as a service award.

## IV.    Conclusion

In accordance with the foregoing, the court ORDERS as follows:

1. The court **GRANTS** final approval of the proposed Settlement Agreement (Doc. No. 48);

2. Class Members are defined as:

   all of Defendant's hourly, non-exempt Sergeants, Detention Officers, Correction Officers and other similarly titled officers, if any, who were employed in the State of California at any time between June 21, 2013 through the date of Preliminary Approval, but in no event later than November 30, 2019.

   Section 203 Sub-Class members are defined as:

   that portion of the Settlement Class, who at any time from June 21, 2012 through the date of Preliminary Approval, but no later than November 30, 2019, were separated from employment with Defendant in California.

3. This order applies to all claims or causes of action settled under the Settlement Agreement and binds all Class Members who did not affirmatively opt-out of the

17cv1624 JM(RBM)

Settlement Agreement by submitting a timely and valid Request for Exclusion. This order does not bind persons who filed timely and valid Requests for Exclusion;

4. Plaintiffs and all Class Members who did not timely submit a valid Request for Exclusion are: (1) deemed to have released and discharged Defendant from any and all Released Claims accruing during the Class Period; and (2) barred and permanently enjoined from prosecuting any and all Released Claims against the Released Parties. Additionally, Plaintiffs Lopez and Alejo each, on his own behalf and on behalf of all successors in interest, fully and finally releases the Defendant from all claims of every nature, known or unknown, relating to any act or omission by the Defendant committed or omitted prior to the execution of the Settlement Agreement. The full terms of the releases described in this paragraph are set forth in paragraph 7 of the Settlement Agreement and are specifically incorporated herein by this reference;

5. No later than ten (10) business days after the entering of this order MTC will deposit the $3,500,000 into an account from which the Claims Administrator will issue individual settlement payments to participating Class Members according to the terms and timeline stated in the Settlement Agreement;

6. The court **GRANTS IN PART** Plaintiffs' motion for attorneys' fees, costs and class representative payments (Doc. No. 47). The court **GRANTS** Class Counsel attorneys' fees in the amount of $1,050,000 and $20,753.78 in costs from the class settlement amount. Payment shall be made pursuant to the timeline stated in the Settlement Agreement;

7. The court **GRANTS** a class representative award of $10,000 to each of the named Plaintiffs, Carlos Lopez an Angel Alejo to be paid from the class settlement amount. Payment shall be made pursuant to the timeline stated in the Settlement Agreement;

8. The court **GRANTS** the award of $75,000 to the Labor and Workforce Development Agency as civil penalties arising under the PAGA of 2004, CAL. LABOR CODE §2968, *et seq.*;

9. The court **GRANTS** final approval of $14,000 in settlement administration costs to be paid from the Class Settlement Amount to the CPT Group, Inc. Payment shall be made pursuant to the timeline stated in the Settlement Agreement;

10. The court retains continuing jurisdiction over this Settlement solely for the purposes of enforcing the agreement, addressing settlement administration matters and addressing such post-judgment matters as may be appropriate under court rules and applicable law; and

11. Judgment is entered on the terms set forth above. The Clerk of the Court shall close the case.

IT IS SO ORDERED.

Dated:  April 20, 2020

Hon. Jeffrey T. Miller
United States District Judge